[No. 61. Third Appellate District.—September 26, 1905.]

D. O. CASTLE, Respondent, v. WALTER F. SIBLEY, Sheriff, etc., and GEORGE E. CRANE, Appellants.

SALE OF HAY—PURCHASE BY OWNER OF LAND FROM CROPPER—DELIVERY AND CHANGE OF POSSESSION—ATTACHMENT—SUPPORT OF FINDINGS. —In an action involving the title to hay sold by a cropper to the owner of the land, and the validity of an attachment against the cropper, where the court found in favor of the plaintiff, and that there was an actual delivery and continuous change of possession prior to the attachment, all conflict in the evidence must be resolved in favor of the action of the trial court, and the findings are sufficiently supported by evidence tending to show that aside from plaintiff's interest in the hay as owner of the land, he in good faith purchased the cropper's interest for full value, and that after the sale the hay was under his exclusive dominion and control by his own agent on the land.

APPEAL from a judgment of the Superior Court of San Joaquin County and from an order denying a new trial. W. B. Nutter, Judge.

The facts are stated in the opinion of the court.

R. C. Minor, and W. A. Washington, for Appellants.

Nicol & Orr, for Respondent.

McLAUGHLIN, J.—This is an action to recover a sum of money held by the defendant sheriff in lieu of certain hay attached by him in a suit brought by defendant Crane

against Hayes Nicewonger and others. The plaintiff had judgment, and from such judgment, and an order denying their motion for a new trial defendants appeal. The pivotal question argued in the briefs, and upon which the determination of this appeal depends, is whether a sale of the hay levied upon, made by Hayes Nicewonger to plaintiff, prior to such levy, was accompanied by an immediate delivery, and followed by an actual and continuous change of possession as required by section 3440 of the Civil Code. The findings in this regard are assailed as not supported by the evidence, and a brief summary of such evidence will suffice to indicate the points upon which such contention is based. It appears that plaintiff owns the land upon which the hay in question was produced, and that Hayes Nicewonger, his brother-in-law, occupied the same from October 1, 1902, to September 30, 1903, under a contract whereby Nicewonger was to farm the land and yield to plaintiff one third of the crop produced. During the term of Nicewonger's occupancy of the land he maintained a residence in Stockton, and came home nearly every night, returning to the ranch in the morning. After the termination of the contract above mentioned, there was little if any apparent change in the manner of his general occupancy of the premises. At the time the hay was harvested he was indebted to the Farmers' Union and Milling Company, such indebtedness being secured by a mortgage on the crop produced on this land. The company was pressing this demand against him, and on September 23, 1903, pursuant to an understanding between Nicewonger, the plaintiff, and the officers of said company, plaintiff bought this hay and paid Nicewonger the full market value thereof, and the purchase price was applied to the payment of the above-mentioned indebtedness. There is not the slightest conflict as to the sale and payment of the purchase price, nor is there any evidence tending to show that such sale was fraudulent or designed to hinder or delay other creditors. Immediately after the sale was made, plaintiff instructed Cary Nicewonger to go out to the ranch and take charge and possession of such hay, and prepare to deliver it whenever and wherever directed to do so by plaintiff. Cary went out to the ranch and that evening went down to the place where the contractor baling the hay was at work, drove some hogs away from it, and was down there nearly every day thereafter. He pre-

pared teams to deliver the hay, kept it in sight all the time, and while he did not place any signs on stacks or bales, nor cause it to be immediately moved from its position on the land, there is evidence sufficient to sustain the conclusion that he had charge of it, and that it was delivered under his direction pursuant to orders from Castle. At the time of the sale the hay was stacked at different places on the land, there being about sixty or seventy tons in each stack. At that time but forty-four tons had been baled, and the contractor continued to bale the remainder, concluding his labors about September 30th. The total amount baled was one hundred and fifty-five tons. The contract for baling was made by Hayes Nicewonger before the sale, but after the sale the contractor was holding possession and claiming a lien on the hay, and plaintiff paid his demand in full. After the sale Castle made repeated efforts to sell the hay, and on September 29th he sold it to Rumenapf & Co., and instructed Cary to deliver it on board the cars at French Camp as speedily as possible. His directions were obeyed without delay, and on October 3d about five carloads, or sixty tons, had been so delivered. On that day, and while the hay was in course of delivery to Rumenapf & Co., defendant sheriff, by virtue of an attachment issued in the case of George E. Crane v. Hayes Nicewonger et al., levied upon the hay remaining on the land, and out of such attachment this controversy arose. At the time of the first sale to plaintiff, his portion of the hay had not been separated from the general mass, nor delivered to him. After September 23d about five tons of the hay was delivered to one Fohls at Stockton by plaintiff's order, and on the day of the sale a load was placed in the barn of Hayes Nicewonger in that city. One employee of Hayes Nicewonger assisted in the delivery of the hay and Nicewonger's teams were used for the purpose, but there is nothing to show whether plaintiff compensated Nicewonger for such service. Hayes Nicewonger sometimes went to French Camp while the hay was in course of delivery, but there is positive testimony to the effect that each load was delivered under Cary Nicewonger's personal supervision. The defendants do not dispute plaintiff's right to the proceeds arising from the sale of hay actually delivered to Rumenapf & Co., and it was

stipulated that the remaining hay should be delivered to them, and that the purchase price of such remainder should be paid to the sheriff instead of plaintiff, and held by such sheriff pending the result of this action. Cary Nicewonger is the son of Hayes Nicewonger and the nephew of plaintiff. His residence was in the city of Stockton, where he had lived about thirty-two years. About September 10, 1903, he was in San Francisco, but came back to Stockton at plaintiff's request, and on the last-mentioned date went out to the ranch to care for plaintiff's stock and attend to other interests of plaintiff on this ranch. During his stay there he lived in the only dwelling on the premises, which dwelling was also occupied by his father. The evidence shows without conflict that he went out to the ranch on September 10th and remained there as the employee and servant of plaintiff, and that he did no work and performed no service whatever for his father. Evidence was introduced tending to contradict some statements made by plaintiff as a witness in the case, and it is said that his testimony is entitled to no weight. But the court cannot say that evidence clearly relevant and competent should have been rejected or accepted by the trial court in reaching a conclusion as to matters of fact. Under the well-settled rule conflicts in the evidence must be resolved in favor of the action of the trial court, and the only question here to be passed upon is whether there is sufficient evidence in the record to sustain the findings. We are of the opinion that this question must be answered in the affirmative. Aside from plaintiff's interest in the hay, and the fact that the purchase price was used to redeem the crop from the lien of the crop mortgage, he also redeemed it from the asserted lien of the contractor who baled the hay. But waiving these considerations, there is sufficient evidence to show that after the sale the hay was under his exclusive dominion and control, and under the authorities the findings cannot be disturbed. (*Feeley* v. *Boyd,* 143 Cal. 286, [76 Pac. 1029] ; *Dubois* v. *Spinks,* 114 Cal. 292, [46 Pac. 95] ; *Porter* v. *Bucher,* 98 Cal. 459, [33 Pac. 335] ; *Byrnes* v. *Moore,* 93 Cal. 394, [29 Pac. 70] ; *Claudius* v. *Aguirre,* 89 Cal. 503, [26 Pac. 1077] ; *Hickey* v. *Coschina,* 133 Cal. 83, [65 Pac. 313].)

The briefs are entirely silent as to the many assignments of error contained in the bill of exceptions, and for this rea-

son we do not feel called upon to examine or consider such assignments.

The judgment and order are affirmed.

Chipman, P. J., and Buckles, J., concurred.